UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO STEEL CO., INC.
a New Mexico corporation,

   Plaintiff,

vs.                  CIV. No.  97-1169 BB/DJS

PURITAN-BENNETT CORP.
a Delaware corporation,

   Defendants.

**MEMORANDUM OPINION**

  THIS MATTER comes before the Court for consideration of Plaintiff's March 10, 1998 Objections to Magistrate's February 24, 1998 Order.  (Doc. 14).  The Court has reviewed the parties' submissions and the relevant law and, for the reasons set forth below, determines that further fact development is necessary before the issues pending in this case can be resolved.  The Court also determines that not all issues raised in the Amended Complaint are arbitrable under the terms of the parties' contract.

  **Standard of Review of Magistrate's Memorandum Opinion and Order**

  Plaintiff argues that the Magistrate had no jurisdiction to issue the order compelling arbitration, because the order is dispositive of the issues in this case.  Plaintiff appears to maintain that the Magistrate's decision should be reversed simply because it concerned a dispositive matter.  However, the proper result if the arbitration order is considered a dispositive order is not automatic reversal.  Instead, the question for this Court is whether to review the Magistrate's action under a "clearly erroneous or contrary to law" standard or a "de novo review" standard.

See <u>Ocelot Oil Corp. v. Sparrow Industries</u>, 847 F.2d 1458, 1461-62 (10th Cir. 1988) (magistrates may hear dispositive motions, but district court must then undertake de novo determinations as to those matters if there is an objection; as to non-dispositive matters, the district court review is pursuant to a clearly-erroneous-or-contrary-to-law standard).  In other words, the issue of whether the Magistrate's action in this case was dispositive or non-dispositive affects only this Court's standard of review of that action, not the underlying merits of the order.

Case law on the issue of whether an order requiring arbitration is dispositive or non-dispositive is sparse.  Even in a seemingly analogous area of law, concerning a magistrate's power to remand a case to state court, there is no circuit authority determining whether such a remand order should be considered dispositive or non-dispositive.  See <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13 (1st Cir. 1992) (noting conflicting district court authority on issue, but declining to "enter the fray").  The only authorities directly on point, to the Court's knowledge, are a federal magistrate judge's opinion and a district court judge's opinion in the same case, both holding that a motion to compel arbitration is not a dispositive motion.  <u>Herko v. Metropolitan Life Ins. Co.</u>, 978 F.Supp. 141, 142, fn. 1 (W.D.N.Y. 1997) (<u>Herko I</u>); <u>Herko v. Metropolitan Life Ins. Co.</u>, 978 F.Supp. 149, 150 (W.D.N.Y. 1997) (<u>Herko II</u>).  The magistrate's footnote in <u>Herko I</u> notes that an order compelling arbitration does not end the case in federal court, because the parties must apply to that court for an order confirming the arbitration award.  The magistrate further noted that magistrate orders remanding cases to state court, thereby completely disposing of them in the federal court, are generally considered non-dispositive orders.  <u>Herko II</u>, on the other hand, contains no reasoning for its holding.

The Court finds the analogy to remand orders persuasive. An order compelling arbitration, like a remand order, puts an end (at least temporarily) to the litigation in federal court. In neither situation is the dispute between the parties terminated; instead, the dispute is simply moved to a different forum. Furthermore, neither remand orders nor orders compelling arbitration are included within the specified matters that Congress has placed beyond a magistrate's jurisdiction. 28 U.S.C. § 636(b)(1)(A); see DeCastro v. AWACS, Inc., 940 F.Supp. 692, 695 (D.N.J. 1996). According to DeCastro, the "vast majority" of federal district courts that have addressed the issue have determined that remand orders are not dispositive orders. Id. This statement appears to be accurate. See, e.g., Delta Dental v. Blue Cross & Blue Shield, 942 F.Supp. 740, 744 (D.R.I. 1996) (citing cases). The Court agrees with the majority position and finds that it is apt as applied to the order compelling arbitration in this case. Therefore, the Court determines that the Magistrate's Order concerned a non-dispositive matter and should be reviewed under a clearly-erroneous-or-contrary-to-law standard.[1]

**Should the Court or the Arbitrator Decide the Effect of the Failure to Submit Schedules in Timely Fashion?**

One issue not raised or discussed by the parties, but a necessary preliminary inquiry, is whether this Court or the arbitrator should decide the waiver question. Generally, when a question concerning arbitration is raised, it is the courts' prerogative to decide questions of substantive arbitrability -- that is, whether a particular issue is within the scope of the contract's

---

[1] The Court notes that the result in this case would be the same under either standard of review. The Magistrate held no hearing at which testimony was given, so there are no factual determinations to review under the clearly-erroneous standard. Since the Magistrate's decision was based solely on a question of law rather than a factual determination, the contrary-to-law standard of review is the functional equivalent of a de novo review.

arbitration clause. Denhardt v. Trailways, Inc., 767 F.2d 687, 690 (10th Cir. 1985). The arbitrators, on the other hand, generally decide issues concerning the timeliness of the request for arbitration, waiver of the arbitration provision, or laches. Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983) (doubts concerning scope of arbitrable issues should be resolved in favor of arbitration, whether problem at hand is construction of contract or an allegation of waiver, delay, or a like defense to arbitrability); Local 285 v. Nonotuck Resource Assocs., Inc., 64 F.3d 735, 739-40 (1st Cir. 1995) (timeliness of filed grievance is a classic procedural question to be decided by the arbitrator, rather than the court). Pursuant to the foregoing principles, if the arbitration provision at issue in this case were a general arbitration clause submitting disputes arising out of the contract to a standard arbitration process, the Court would be inclined to allow the arbitrators to decide the question of waiver.

      The difficulty in this case, however, is that the arbitration provisions in the contract are quite narrow. The contract contains no blanket provision concerning arbitration. Instead, the arbitration clauses come into play only in limited circumstances, after the required schedules have been prepared and submitted. Furthermore, the disputes are not to be resolved under standard arbitration procedures, but are to be submitted to an accounting firm for resolution. This indicates that the role of the accounting firm was intended to be limited to determining the accuracy and validity of the schedules submitted, rather than legal issues surrounding the schedules. The Court must decide this threshold arbitrability issue with reference to state law, deciding under that law whether the waiver issue should be submitted to arbitration or decided by this Court. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (courts

generally apply ordinary state-law principles governing formation of contracts when deciding whether the parties agreed to arbitrate a certain matter).

In New Mexico, as in the federal-court system, there is a strong preference for resolution of disputes by arbitration rather than in the courts. United Technology and Resources v. Dar Al Islam, 115 N.M. 1, 3, 846 P.2d 307, 309 (1993). However, again as in the federal system, the parties may only be compelled to arbitrate issues they have actually agreed to arbitrate. Kaplan, 514 U.S. at 943; Pueblo of Laguna v. Cillessen & Son, Inc., 101 N.M. 341, 343, 682 P.2d 197, 199 (1984). When a broad and general arbitration clause is used in a contract, a court should be quite reluctant to deprive the parties of the agreed-to process. Bernalillo County Medical Center Employees v. Cancelosi, 92 N.M. 307, 308-09, 587 P.2d 960, 961-62 (1978). In this case, however, as the Court has already noted, the arbitration provision is not broad or general.

Even applying a bias toward arbitration, the Court cannot find language in the contract that would allow a "nationally recognized accounting firm" to decide the legal effect of the failure to submit the schedules concerning inventory, accounts receivable, etc., within the designated time frames. The arbitration process contemplated by the contract comes into play only after schedules have been submitted, disputed, and possibly negotiated. In short, the parties appear to have intended that the designated accounting firm would resolve only disputes concerning the numbers and monetary figures provided in the schedules, not the effect of an initial failure to timely submit the schedules. For these reasons, the Court, rather than an arbitrator, must decide the waiver issue raised by Plaintiff in this case.[2]

---

[2]Given the Court's ultimate holding below, that extrinsic evidence must be considered to determine the intent of the parties with respect to the waiver issue, the Court is open to re-examining this issue should the extrinsic evidence reveal that the intent of the parties was to create

**Merits of Arbitration Order**

**A. Are All Claims In This Case Governed by Arbitration Provisions?**

Plaintiff maintains that its amended complaint raises a number of issues and claims that are not covered by the arbitration provisions of the contract. The Magistrate's opinion, on the other hand, characterized the issues as arising out of a simple dispute over the amounts of adjustments to be made to the purchase price, as a result of the final tally of gas cylinders, inventory, accounts receivable, and office equipment. In essence, the Magistrate determined that, once the schedules had been submitted and disputed, the entire dispute between the parties was encapsulated within those schedules.

The Court finds that Plaintiff has raised other issues and made other claims in addition to the dispute over the accuracy of the schedules finally submitted by Defendant, although Plaintiff did not clearly specify those other issues in the brief submitted in opposition to the motion to compel arbitration. First and foremost, Plaintiff's amended complaint does not merely ask that the federal court, rather than an arbitrator, determine the accuracy of the schedules. Plaintiff instead maintains that Defendant has forfeited, through its delay, any right to have adjustments made to the purchase price. Count Two of the amended complaint asks this Court to declare not only that Defendant has waived the right to submit the schedule dispute to arbitration, but also that Defendant has waived the right to obtain adjustments to the purchase price. Plaintiff asks that the balance of the purchase price, without any adjustments, be awarded as damages. In essence, Plaintiff's position is that if Defendant wanted to have the purchase price adjusted as a result of calculations concerning the value of the inventory, accounts receivable, gas cylinders,

---

a much broader arbitration provision than is indicated by the language of the contract.

and office equipment, it was incumbent on Defendant to submit the schedules in a timely manner. Absent such timely submission, according to Plaintiff, Defendant was automatically obligated to pay the entire purchase price agreed upon by the parties.

It is apparent that the foregoing issue, although not argued clearly in the briefs,[3] is of paramount concern in this case. It is also apparent that, as a legal and perhaps factual question concerning the ramifications of a failure to timely perform a provision of the contract between the parties, it is an issue beyond the scope of the limited arbitration provision agreed to by the parties. Finally, resolution of the issue could render arbitration unnecessary even if arbitration is otherwise warranted in this case -- that is, if Plaintiff's position is correct, there is no need to determine the accuracy of Defendant's schedules because Defendant is obligated to pay the full purchase price irrespective of the contents of the schedules. This is not an issue that should be decided by an arbitrator, given the narrow scope of the arbitration clauses in the contract.

Another claim raised by Plaintiff in the amended complaint is a claim that Defendant is liable under a prima-facie-tort theory. This claim is not limited to a dispute over the figures provided in the schedules, but encompasses a claim that Defendant deliberately delayed the preparation of the schedules and then knowingly filed false schedules, in an effort to avoid paying the amount of money rightfully owed under the contract. Such a claim lies outside the scope of the arbitration clauses in the contract. Defendant argues that the claim is without merit, and that a party should not be able to avoid an arbitration provision by asserting a frivolous claim of prima

---

[3]The briefs discuss, in the main, the question of whether the right to submit the dispute to arbitration has been waived. This makes it appear that the only question is who shall decide the dispute -- this Court or an arbitrator. The scope of the amended complaint, however, is much broader, raising the theory discussed above -- that Defendant has waived the entire adjustment process, rendering the entire dispute moot.

facie tort. Under a broad arbitration provision, it is likely such a claim would be submitted to arbitration with the other claims raised by the parties. The difference in this case, as the Court has discussed above, is not the strength of the claim asserted, but the limited scope of the arbitration provisions to which the parties agreed. In addition, even though the prima-facie-tort claim may eventually be amenable to dismissal or summary judgment, see, e.g., Stock v. Grantham, ___ P.2d ___, 1998 WL 330920 (N.M.App. 1998), and Lexington Ins. Co. v. Rummell, 123 N.M. 774, 945 P.2d 992 (1997), at this point it is still a viable claim that is not subject to the contract's arbitration provisions.

It is not clear whether Plaintiff has raised other claims that are not governed by the arbitration provisions. Since the case will not be stayed at this point, as discussed below, that question can be resolved at a later date, if necessary.

### B. Whether Defendant Has Waived Right to Adjustments or Arbitration

As the Court has noted above, Plaintiff maintains that Defendant has waived the right to obtain any adjustments to the purchase price, or in the alternative to submit any disputes about the adjustments to an arbitrator, by failing to comply with the time deadlines contained in the contract. Defendant admittedly did not submit the schedules concerning gas cylinders, inventory, accounts receivable, or office equipment within the time periods required by the contract. According to Plaintiff, compliance with those time requirements was a condition precedent to Defendant's right to obtain any adjustment to the purchase price, or to avail itself of the arbitration process.

Defendant, on the other hand, argues that the contract is silent about the effect of any failure to comply with the deadlines. According to Defendant, the contract is clear about one

8

thing: once the schedules are submitted, the failure to challenge those schedules within thirty days renders the schedules conclusive and binding as to both Plaintiff and Defendant. However, Defendant points out, the contract contains no such waiver language when discussing the deadlines for initially submitting the schedule. According to Defendant, this contractual silence regarding the effect of untimely submission of the schedules means no waiver was contemplated by the parties.

      The Court does not believe this issue can be resolved solely by reference to the language of the contract. One plausible reading of the adjustment-and-arbitration clauses is the one proffered by Plaintiff: that the contract contemplates Defendant will submit schedules within a certain time, that the failure to do so will waive the arbitration process, and that such failure may conclusively indicate Defendant is bound by the purchase price contained in the contract and is not entitled to any adjustments to that price. Another plausible reading, however, given the absence of any language indicating the effect of untimely performance by Defendant, is that the time deadlines are subject to adjustment for good cause, or that Defendant might have to pay damages for its delay (such as interest) but will still have the right to claim adjustments if such adjustments are warranted by the schedules. Under this interpretation, the initial deadlines for submission of the schedules would have no effect on the arbitration process, which would not take effect until after the schedules had been submitted and a timely notice of dispute had been provided. Given these conflicting possible interpretations of the contract, the Court finds that the language of the contract is ambiguous as to the effect of any failure by Defendant to comply with the time deadlines for submission of the schedules.

Under New Mexico law, evidence extrinsic to the contract itself may be considered to establish the parties' intent, if the contract is ambiguous or if the extrinsic evidence establishes an ambiguity. See, e.g., Mark V, Inc. v. Mellekas, 114 N.M. 778, 781-82, 845 P.2d 1232, 1235-36 (1993). It is necessary to consider such extrinsic evidence in this case, to determine what the parties contemplated at the time of contracting. For example, it is likely that in establishing the time deadlines for the schedules the parties discussed the purpose of those deadlines, and the effect of any failure to comply with them. Subsequent communications between the parties could also be relevant to the question of the parties' intent, even if no explicit discussions were initially held concerning the timeliness issue. At this time, therefore, the Court will not compel Plaintiff to submit any of the issues in this case to arbitration. Instead, such action will be taken, if at all, only following development of the facts.

**Conclusion**

As the above discussion has demonstrated, the narrow scope of the arbitration clauses indicates the parties did not intend to have an arbitrator decide broad legal issues such as the waiver issue raised by Plaintiff. In addition, the language of the contract is ambiguous as to the intended effect of any failure to comply with the time deadlines for submission of the schedules. For these reasons, the case will not be stayed at this time and no order compelling arbitration will issue. It is possible, however, that after development of the facts, it will be determined that some or all of the issues should be submitted to the arbitration process established by the contract. It is premature at this point to decide whether the necessary factual determinations should be made by the Magistrate or a jury. An Order in accordance with this Memorandum Opinion will issue.

DATED July 24, 1998.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE