# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO STEEL CO., INC.
a New Mexico corporation,

       Plaintiff,

vs.                                                                CIV. No. 97-1169 BB/DJS

PURITAN-BENNETT CORP.
a Delaware corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of several post-trial motions filed by Plaintiff and Defendant, including the following: motions for stay of judgment and for a new trial or remittitur, filed by Defendant (Docs. 90, 94), and motions for prejudgment interest and attorney's fees, filed by Plaintiff (Docs. 96, 99). The Court has already denied Defendant's renewed motion for judgment as a matter of law (Doc. 92), in open court. Having reviewed the parties' submissions and the relevant law, the Court makes the following determinations.

**Prejudgment interest:** The decision to award prejudgment interest in a contract case such as this one may be discretionary or as of right, depending on whether the amount owed is fixed or easily ascertainable. *See* NMSA 1978, §§ 56-8-3(A), 56-8-4(B); *State ex rel. Davis Masonry, Inc. v. Safeco Ins. Co. of America*, 883 P.2d 144, 147 (N.M. 1994). The Court need not decide whether Plaintiff is entitled to such an award as a matter of right, because the Court will exercise its discretion to award prejudgment interest in this case. Since this case involves a written contract that specifies no rate of interest, the Court may award interest of up to fifteen

percent from the date the contract was breached to the date of judgment. *See Bob Davis*. As the Court indicated at the hearing on this motion, the full fifteen percent interest allowed by Section 56-8-3 seems excessive given the prime rate since the breach occurred. Instead, the Court will award prejudgment interest at the rate of eight percent, an amount that more closely approximates the prime rate applicable during the time in question. This amount will accrue from March 18, 1997, the date of the first breach of the purchase agreement. According to the Court's calculations, the amount of prejudgment interest owed by Defendant is therefore $94,625.

**Attorney's Fees:** The contract between the parties calls for an award of attorney's fees to the prevailing party, in any disputes arising out of the contract. The only issue before the Court, therefore, is the amount of fees to be awarded. Plaintiff has requested an award of $56,833.52 for the services of the Wagner law firm, and an award of $28,647.52 for the services of the Butt law firm. As the Court indicated at the hearing, there appears to be a substantial amount of duplication of effort, due to the number of attorneys working on the case at the Butt firm and as a result of the transfer of representation from that firm to the Wagner firm. For that reason, the attorney's fees requested by Plaintiff will be reduced by $9,370.00. This amount reflects reductions of all hours claimed by the Butt firm after November 24, 1998, the date the Wagner firm entered its appearance. It also reflects a reduction of the hours claimed by the Wagner firm prior to November 24, 1998. The total amount of attorney's fees awarded, therefore, will be $76,111.

**Remittitur or new trial:** Defendant has requested a reduction in the amount of compensatory damages as well as punitive damages. The award of compensatory damages was clearly supported by the evidence. Defendant attempts to argue there was uncontroverted

evidence that the values assigned in Exhibit A to inventory and accounts receivable were erroneous, and that the actual values were lower. This ignores the testimony indicating Plaintiff's valuations of the inventory and accounts receivable were actually higher than the values assigned by Exhibit A, and that the Exhibit A values were the minimum amounts Plaintiff expected to realize from the transaction. This portion of Defendant's motion will be denied.

Concerning the punitive damages issue, there are two separate questions facing the Court. The first is, what is the maximum multiplier that can constitutionally be applied to the compensatory damages in this case, in assessing punitive damages?[1] The second is, should attorney's fees and prejudgment interest be included in the compensatory damages amount, prior to applying the maximum constitutional multiplier? The Court will initially address the multiplier question, and then decide the proper multiplier base.

The Tenth Circuit, in two fairly recent opinions, has found a maximum ratio of six to one in cases involving commercial transactions resulting in economic harm. *See F.D.I.C. v. Hamilton*, 122 F.3d 854, 862 (10th Cir. 1997); *Continental Trend Resources, Inc. v. OXY USA Inc.*, 101 F.3d 634, 643 (10th Cir. 1996). This ratio was applied to the total of actual and potential damages, rather than actual damages alone, in *OXY*. In assessing the maximum constitutional

---

[1]The Court recognizes that the punitive-damages inquiry is normally not phrased in terms of searching for a constitutional "multiplier"; the official practice is for courts to attempt to determine only the maximum amount of punitive damages that is constitutionally acceptable in the case before it, with the acceptable multiplier being only one factor in the inquiry. However, as discussed below, in arriving at that constitutionally-acceptable amount in several cases, what the Tenth Circuit has done is to examine a number of factors germane to the due-process inquiry, and then arrive at a ratio between compensatory damages and punitive damages that is acceptable in each particular case. The result is a helpful mathematical and logical process that may be followed in other cases, albeit with variations for the facts of each individual case. The Court therefore follows the same process in this case.

level of punitive damages, the Tenth Circuit applied a three-part test mandating examination of the "reprehensibility" of the defendant's conduct, the ratio between punitive damages and the actual or potential harm suffered, and the difference between the punitive damage award and the civil and criminal penalties available for comparable conduct. *See F.D.I.C.*, 122 F.3d at 861. In turn, the "reprehensibility" factor has been broken down into an analysis of whether the defendant's conduct has caused, or could cause, economic harm rather than physical harm; whether the conduct would be considered unlawful in all states; whether the conduct involves repeated behavior rather than a single transaction; whether the conduct involves deliberate false statements rather than omissions; whether the defendant engaged in violent behavior; and whether the conduct was aimed at a vulnerable target. *Id.* Finally, the Tenth Circuit has indicated that a comparison of the punitive damages award to the wealth of the defendant, while not a significant factor, is not irrelevant. *Id.*, 122 F.3d at 862.

In reviewing the above factors, the Court will engage in a comparison with the facts, parties' conduct, and outcomes of both the *OXY* case and *F.D.I.C.* The Court acknowledges that every case is different factually, and it is thus inappropriate to woodenly apply the results from other cases to the one before the Court. However, in engaging in the difficult task of applying the "murky" guidelines established by the Supreme Court concerning constitutionality of punitive-damages awards, *see F.D.I.C.,* one important inquiry for the Court is the following: what reasonable notice did Defendant have concerning the amount of punitive damages it could be exposed to as a result of its conduct? *See OXY*, 101 F.3d at 641. An acceptable means of deciding this notice question is to examine cases with similar facts to determine the level of punitive damages considered constitutionally appropriate in those cases. *See id.* (discussing

4

punitive-damages cases from the subject jurisdiction and other states as providing sufficient notice of the potential for large punitive awards). In addition, one prime goal of the law should be to treat similarly-situated parties in a similar manner, thus enhancing the fairness of the legal process. This goal is no different where constitutional principles such as due process are involved, and the Court's analysis in this case will therefore strive to meet this aim.

One important similarity between this case and *F.D.I.C.* and *OXY* is the fact that in this case, as in the others, the only harm caused by Defendant's conduct was economic, and no violent conduct of any kind occurred. This is a significant consideration in assessing the reprehensibility of Defendant's actions. 122 F.3d at 862. Furthermore, in this case as in *F.D.I.C.* the harm arose out of a contractual relationship in which the parties had an opportunity to protect themselves by providing for remedies should a breach of the contract occur. In addition, this case is similar to *F.D.I.C.* in another respect – the fact that this case involved a number of failures, omissions, misrepresentations, and affirmative acts arising out of a single contractual relationship. In *OXY*, on the other hand, the plaintiff established that the defendant regularly engaged in attempts to coerce weaker competitors, and that the defendant's conduct in that particular case was simply one example of this pattern of misconduct. *Id.*

Plaintiff has attempted to argue that Defendant's conduct in this case would be considered criminal in all states, stating it meets the elements of embezzlement. The Court disagrees. Viewing the evidence in the light most favorable to Plaintiff, this is a case of a large company using unfair tactics to attempt to cheat Plaintiff out of a substantial portion of the purchase price that would otherwise have been payable. While this conduct may be described as civil fraud, the Court has grave doubts that it would be the subject of criminal penalties in many states. As

Defendant has suggested, however, there is a statutory penalty scheme that appears to apply to conduct analogous to Defendant's conduct in this case. The New Mexico Unfair Practices Act prohibits unfair or unconscionable trade practices, and describes such practices in terms quite similar to Defendant's conduct. NMSA 1978, §§ 57-12-2 and -3. The Act allows for an award of up to three times the actual damages, should a plaintiff be able to establish the defendant acted willfully. NMSA 1978, § 57-12-10(B). This treble-damages provision is the most analogous civil or criminal penalty in New Mexico.

It is important to point out, however, when considering comparable civil or criminal penalties assessed for similar conduct, that New Mexico courts have approved substantial multipliers in punitive-damages cases, some of which involve commercial activity. *See, e.g., Coates v. Wal-Mart Stores, Inc.*, 976 P.2d 999, 1010-11 (N.M. 1999) (punitive damages awards of $1,200,000 and $555,000, based on compensatory damages of $114,000 and $45,000, respectively, upheld on appeal); *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 976 P.2d 1, 18 (N.M. 1998) (in commercial insurance coverage case, punitive damages award of $4,000,000 based on compensatory damages of $540,000, ratio of 7.4 to 1, found to "easily" bear constitutional scrutiny). As noted above, the fact that substantial punitive damages have been awarded in other cases in the state has been found to serve notice to a defendant that such awards might be possible, arising out of the transaction at hand. *OXY*, 101 F.3d at 641.

Another way the facts of this case are similar to those in *F.D.I.C.* is in the type of actions involved, and the reasons for those actions. In *F.D.I.C.*, the defendant made false statements in an effort to avoid paying more money to meet its obligations under a lease, and in an effort to put pressure on the lessee. 122 F.3d at 858-59. In this case, Defendant made false statements

concerning the amount of inventory present at the time of the sale, as well as other false statements, in an effort to avoid paying more money to meet its obligations under the purchase agreement. It is true, however, that Plaintiff, the target in this case, was in a much less vulnerable position than the plaintiff in *F.D.I.C.* In this case, Plaintiff was a corporation that was being paid over one million dollars for one portion of its assets, and was also being paid substantial sums (by third parties) for the rest of its assets. Plaintiff had already decided to go out of business and sell its assets, so there was no danger that Plaintiff would be forced out of business or into bankruptcy. In *F.D.I.C.*, on the other hand, the plaintiffs were individuals who were left broke after paying $100,000 for repairs to the leased premises. 122 F.3d at 860; *see also OXY*, 101 F.3d at 639 (plaintiff's business almost decimated by the defendant's actions).

The final factor to be considered in arriving at a constitutionally acceptable multiplier is the size of the compensatory damages award compared to the wealth of Defendant. *Id.*, 122 F.3d at 862. The jury's award in this case, $423,000, was less than one-tenth of one percent of Defendant's net worth.[2] This compensatory damages award, however, was almost ten times as high as the $44,000 award in *F.D.I.C.*, which also involved a wealthy corporate defendant. A higher compensatory damages award dictates that a higher ratio of punitive damages to compensatory damages is not as necessary for deterrence-of-future-conduct purposes. *Id.*

Considering all of the foregoing, the Court certainly cannot justify a higher ratio than the six-to-one ratio applied by the Tenth Circuit in both *OXY* and *F.D.I.C.* As noted, the only harm Plaintiff could have suffered from Defendant's conduct was purely economic, namely receiving

---

[2]There was evidence at trial that the net worth of Nellcor Puritan Bennett, the named Defendant, was $474 million. In 1997 Nellcor was purchased by Mallinckrodt, Inc. for $1.9 billion.

7

less money for the sale of one portion of its assets. Moreover, Defendant's conduct in this case was no more fraudulent or blameworthy than the conduct of the defendants in *OXY* and *F.D.I.C.* As discussed above, the other factors the Court must consider do not weigh more heavily in Plaintiff's favor than they did in the *OXY* and *F.D.I.C.* cases. Using those cases as a guide, therefore, the Court will find that a six-to-one ratio of punitive damages to compensatory damages is the highest constitutionally permissible ratio that can be supported by the facts of this case.

**Inclusion of Attorney's Fees and Prejudgment Interest:** Plaintiff argues that both the attorney's fees and the prejudgment interest awarded in this case should be included in the compensatory damages figure, prior to applying the multiplier. Plaintiff maintains that the appropriate ratio to determine is the ratio between actual and potential harm to Plaintiff, and the punitive damages awarded by the jury. Included in the potential harm, according to Plaintiff, is the lost use of the money it was rightfully owed, as well as the litigation costs incurred in the successful attempt to obtain payment of that money. Defendant's response is two-fold: first, Defendant argues Plaintiff's request is in essence an untimely motion requesting additional relief, and must be denied on that ground. Second, Defendant maintains Plaintiff's request lacks merit.

The Court rejects Defendant's procedural argument. Plaintiff's submission in writing, while not specifically allowed by the local rules, is not a motion. It is simply legal argument submitted in an attempt to justify the punitive damages awarded by the jury in this case. The same argument could have been made orally, and in fact was made orally at the hearing on these post-trial motions. The Court will therefore consider the merits of Plaintiff's argument.

With regard to the attorney's fees, Plaintiff cites to cases indicating that attorney's fees

8

and litigation costs can be considered in determining the amount of punitive damages to award. It is true that this principle has been stated in a number of cases, including the *OXY* case. *See* 101 F.3d at 642; *see also* Annotation, *Attorneys' Fees or Other Expenses of Litigation As Element in Measuring Exemplary or Punitive Damages*, 30 A.L.R.3d 1443 (1970). The overriding concern in these cases, however, has been the fact that attorney's fees are normally not recoverable from an opposing party. Therefore, these courts have held, in essence if not in fact, that attorney's fees may be included in the punitive damages award to ensure the plaintiff is fully compensated for the necessity of pursuing the litigation. In other words, a large punitive damage award may be justified in part by the fact that the defendant's conduct forced the plaintiff to incur large amounts of litigation expense, making a large award necessary to fully reimburse the plaintiff for those expenses as well as to punish the defendant. *See, e.g.*, *OXY*, 101 F.3d at 642 (otherwise-uncompensated costs of extensive litigation may be considered in determining constitutionally permissible limits on a punitive damages award). Historically, then, punitive damages have been considered, at least in part, as a means of repaying a plaintiff the costs of litigating a claim, where the defendant's conduct was particularly egregious. *See* 30 A.L.R.3d at 1445-46. Logically, then, litigation costs such as attorney's fees would be used as they were in *OXY*, to justify the size of the multiplier, rather than included in the amount to be multiplied.

It is important to remember that in this case, as opposed to the usual American rule case, Plaintiff's attorney's fees are payable by Defendant, under the terms of the parties' contract. Therefore, there is no reason to include them in the punitive-damages calculation, or to ensure the punitive-damages award is large enough to cover Plaintiff's costs of litigation. Put another way, under the terms of the parties' contract, Plaintiff was not put at risk of paying for unnecessary

9

litigation for which no reimbursement would be had.  If Plaintiff could prove Defendant breached the contract, Plaintiff would be entitled to payment of its attorney's fees.  Therefore, the Court holds that the attorney's fees award has no bearing on the amount of punitive damages that is constitutionally appropriate in this case.  *See, e.g.*, *Amica Mutual Ins. Co. v. Schettler*, 768 P.2d 950, 967 (Utah 1989) (in deciding whether an award of punitive damages bears a reasonable relation to the amount of general damages, attorney's fees are more properly considered costs and go on neither side of the scale).

The prejudgment interest question is similar to the attorney's fees issue.  On the one hand, in a case such as this one involving a contract for the payment of money, it is foreseeable that a party will suffer the loss of use of the unpaid money, and this loss of use could be viewed as potential harm that might have been caused by Defendant's conduct.  On the other hand, this was a contract case and, as discussed above, there is a statute in New Mexico providing for the payment of prejudgment interest in such cases.  Thus, Plaintiff's lost use of the money will be recompensed through the award of prejudgment interest in this case.  Furthermore, one of the most important considerations in the due-process analysis of punitive damages awards is the reasonable notice Defendant had, at the time it acted, of the potential size of any punitive damages award that might result from those actions.  *See OXY*, 101 F.3d at 638 (defendant must receive fair notice of the severity of the penalty a state may impose).  The foreseeability of the size of a punitive-damages award would be dramatically lessened if prejudgment interest, which increases day by day and accrues over an unspecifiable time period, were added to the compensatory damages awarded by the jury and then multiplied by the factor found appropriate in each case.  For these reasons, the Court will exclude the prejudgment interest award from the amount to be

included in the six-to-one ratio of punitive damages to compensatory damages to be applied in this case. *Cf. Coates*, 976 P.2d at 1011 (discussing distinct characteristics of punitive damages and prejudgment interest, and holding no prejudgment interest should be assessed on punitive damages award).

**Motion for Stay of Judgment:** The only issue argued by the parties in this motion is the amount of supersedeas bond, if any, Defendant will be required to post. Plaintiff requests Defendant be ordered to post a bond for the full amount of the judgment, including punitive damages. Defendant asks to post a partial bond or none at all. The parties agree the Court has discretion in establishing the amount of bond to be posted. *See Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871,873 (10th Cir. 1986). A full supersedeas bond should be required where there is some reasonable likelihood the judgment debtor will be unwilling or unable to satisfy the judgment in full; on the other hand, a reduced bond or no bond may suffice when there is no resulting danger to the judgment creditor's interest. *Id.* In this case, the judgment debtor is a multinational corporation worth billions of dollars. Alternative forms of security, therefore, appear to be adequate to protect Plaintiff's judgment pending appeal. For that reason, the Court will allow Defendant to either post a supersedeas bond in the full amount of the amended judgment, or to pledge unencumbered assets in the same amount, as security for payment of the judgment. The assets pledged must be specifically identified and in a form acceptable to Plaintiff.

**Conclusion:** Based on the foregoing, a remittitur of the punitive damages award will be ordered, reducing the amount to $2,540,000, or approximately six times the compensatory

damages award of $423,268.[3] Furthermore, attorney's fees in the amount of **$76**,111 will be awarded, as well as prejudgment interest at a rate of eight percent per annum from March 18, 1997 to the date of the amended judgment, a total of $94,625. Finally, execution of the judgment will be stayed provided Defendant posts a supersedeas bond, or pledges unencumbered assets, in the amount of $3,134,817.91.

**ORDER**

In accordance with the foregoing, the motion for new trial or remittitur (Doc. 94) is hereby GRANTED in part and DENIED in part; the motion for attorney's fees (Doc. 99) is GRANTED in part and DENIED in part; the motion for prejudgment interest (Doc. 96) is GRANTED, with interest to accrue at the rate discussed above; and the motion for stay of judgment (Doc. 90) is GRANTED. In addition, the renewed motion for judgment as a matter of law (Doc. 92) has already been DENIED.

DATED January 4, 2000.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[3]The Court notes the usual procedure is for the Court to offer Plaintiff an opportunity to accept the remittitur or request a new trial. However, the Court's decision in this case simply reduced the punitive damages awarded by the jury to the maximum amount allowed under federal constitutional law. The Court has not altered the jury's determination of compensatory damages, and a new trial could not constitutionally yield any different results on the punitive damages issue. For that reason, Plaintiff does not have the option of rejecting the remittitur ordered by the Court. *See OXY*, 101 F.3d at 642-43.

**Attorneys:**

**For Plaintiff**
Kenneth R. Wagner
L. Edward Glass
Kenneth R. Wagner and Associates
500 Copper N.W., #100
Albuquerque, New Mexico 87102

**For Defendant**
Stephen S. Scholl
Gerald G. Dixon
Sharp, Jarmie, Scholl, & Bailey
P.O. Box 27530
Albuquerque, New Mexico 87125-7530